UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL MASSINGILL,<br><br>    Plaintiff,<br><br>v.<br><br>STREAM, LTD., ROB SNYDER, CHRIS DOMHOFF, PIERRE KOSHAKJI, ALEX RODRIGUEZ, and DARRIN PFANNENSTIEL,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 3:08-cv-0091-M<br>§<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Defendants' Motion to Dismiss, or in the alternative, for Judgment on the Pleadings [Docket Entry #34] and (2) Defendants' Motion for Summary Judgment [Docket Entry #35]. For the reasons explained below, Defendants' Motion to Dismiss is **GRANTED**. Defendants' Motion for Summary Judgment is **DENIED**.

### **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Michael Massingill is a citizen of Texas and a former Director of Information Technology for Defendant Stream Gas & Electric, Ltd. (incorrectly named as "Stream Energy, Ltd."). Stream first hired Massingill as an independent contractor in July 2004, and subsequently hired him as its Director of Information Technology in February 2005. Stream is a retail electrical provider that provides electricity and electricity services to consumers throughout Texas. Software programs are central to Stream's provision of its core services.

Massingill took part in developing a software program known as the Arsenal Customer Information System ("Arsenal"), which facilitates Stream's operations by tracking customer

1

accounts and usage, enabling customer billing, and providing customer support capabilities. Massingill alleges that he developed this program before his association with Stream. Stream argues that Arsenal was developed in the scope and course of Massingill's employment with Stream, or alternatively, as "work for hire" while he was an independent contractor for Stream. Massingill resigned his position with Stream in the spring of 2006. There was at that time no discussion between Massingill and Stream about Massingill's claiming an ownership interest in Arsenal.

In October 2007, Stream received notice that Massingill disputed Stream's ownership of Arsenal. On December 21, 2007, Stream filed suit in state court seeking a declaratory judgment as to its rights in Arsenal. Massingill filed suit in federal court on January 22, 2008, claiming copyright infringement by Stream, and removed Stream's lawsuit to federal court, where the two cases were consolidated with Massingill as the plaintiff.

Stream filed a First Amended Answer and Counterclaims requesting declarations that it owned the copyright in Arsenal and that it did not infringe any copyright of Massingill's, and asserting various state law claims that are not before the Court on the subject motions. On July 2, 2009, Stream moved to dismiss Massingill's copyright claim for lack of subject matter jurisdiction, or for judgment on the pleadings, and also moved for partial summary judgment on Massingill's copyright infringement claim and on its declaratory judgment counterclaims.

**ANALYSIS**

I.  Rule 12(b)(1) Motion to Dismiss

Stream moves to dismiss Massingill's copyright infringement claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or alternatively, for judgment on the pleadings under Rule 12(c), or for partial summary judgment under Rule 56. The Court

finds that it does not have subject matter jurisdiction over Massingill's copyright claim, and Stream's Rule 12(b)(1) motion is therefore **GRANTED**. Stream's alternative motions relating to Massingill's claim are therefore **DENIED** as moot.

Lack of subject matter jurisdiction can be raised by a party, or *sua sponte* by the court, at any stage in the litigation.[1] If the court determines that it lacks subject matter jurisdiction, it must dismiss the action.[2] The burden of establishing subject matter jurisdiction rests on Massingill, as the party invoking federal jurisdiction.[3] In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may evaluate: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[4] All factual allegations in the complaint must be accepted as true.[5]

Massingill's Complaint alleges, as the sole cause of action against Stream, a claim for copyright infringement related to Arsenal. However, Massingill's pleadings do not sufficiently allege that he has registered a copyright for Arsenal with the United States Copyright Office.

The Copyright Act of 1976 states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."[6] Thus, "registration with the copyright office is a *jurisdictional* prerequisite to filing a copyright infringement suit."[7] A copyright registration

---

[1] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also Sefton v. Webbworld, Inc.*, 2001 U.S. Dist. LEXIS 19286, at *7-8 (N.D. Tex. Nov. 26, 2001) (Boyle, J.) (re-examining a plaintiff's standing to bring a copyright infringement suit because of an inconsistent date on the face of plaintiff's certificate of copyright registration, discovered by the court during its review of a motion for summary judgment).
[2] Fed. R. Civ. P. 12(h)(3).
[3] *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citation omitted).
[4] *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).
[5] *Id*. at 424.
[6] 17 U.S.C. § 411(a) (2006).
[7] *Creations Unlimited v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (emphasis original); *accord Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365 (5th Cir. 2004).

is effective "the day on which an application, deposit and fee . . . have all been received in the Copyright Office."[8] Failure to establish this prerequisite renders a plaintiff's copyright infringement claim open to dismissal for lack of subject matter jurisdiction.[9]

Although some circuits require that a plaintiff actually present a certificate obtained from the Copyright Office before bringing suit, the Fifth Circuit requires only that the Copyright Office actually *receive* the application, deposit, and fee before a plaintiff files an infringement action.[10] Proof of actual receipt is critical to the Court's subject matter jurisdiction, because the plaintiff may retroactively cure the jurisdictional defect by amending his complaint to plead receipt by the Copyright Office.[11] Massingill's citations to 17 U.S.C. § 411(a) and to case law do not support his argument that the jurisdictional requirements of 17 U.S.C. § 411(a) are met upon *mailing* the application, deposit and fee to the Copyright Office.[12]

Massingill has failed to meet his burden of establishing subject matter jurisdiction by showing that the Copyright Office actually received his application, deposit of the work and fee. In assessing the sufficiency of proof of actual receipt where a certificate of registration is not available, district courts have required proof of either a receipt from the Copyright Office itself

---

[8] 17 U.S.C. § 410(d) (2006).
[9] *See McCain*, 112 F.3d at 816; *Sefton*, 2001 U.S. Dist. LEXIS at *8.
[10] *Positive Black Talk*, 394 F.3d at 365; *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) ("We have previously held that a plaintiff has complied with all statutory formalities for copyright registration when the Copyright Office receives the plaintiff's application for registration, fee, and deposit." (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991)); *Apple Barrel Prods, Inc. v. R. D. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984) ("In order to bring suit for copyright infringement, it is not necessary to prove possession of a registration application. One need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application." (citing 2 Nimmer on Copyright § 7.16[B][1])); *Busch v. Williams*, 2007 U.S. Dist. LEXIS 53328, at *5-6 (N.D. Tex. Feb. 7, 2007) (Fitzwater, J.) ("The Fifth Circuit requires that the Copyright Office actually receive the application, deposit, and fee before a plaintiff files an infringement action." (citation and internal quotation marks omitted)).
[11] *See Positive Black Talk*, 394 F.3d at 365-66 (citations omitted).
[12] *See* Massingill's Response to Stream's Motion to Dismiss at 2; *Positive Black Talk*, 394 F.3d at 367 ("[17 U.S.C.] § 411 has a substantive component and a timing component . . . . [t]he substantive requirement here was satisfied (because [plaintiff] filed a registration application, deposit, and fee), but the timing element was not (because the Copyright Office received the materials after [the plaintiff] filed suit).").

or a delivery receipt from a postal carrier.[13] A mere recitation that the plaintiff mailed the application, fee and work to the Copyright Office is insufficient without proof of the Copyright Office's actual receipt of these materials.[14]

Massingill has produced no file-stamped copy of his application, no certified mail receipt, no copy of transmittal correspondence, no copy of a post-marked envelope in which the application materials were sent, nor any other evidence that would prove that the Copyright Office received his application. The only evidence offered by Massingill is the declaration of his attorney, who states that he deposited the registration materials and a check for the filing fee in the U.S. mail, addressed to the Copyright Office, and that, according to the bank, the check was cashed by some unidentified person.[15] However, this is insufficient to constitute evidence that the Copyright Office received the application, fee and work.

Having failed to establish that the Copyright Office received the application, fee, and work that he purportedly mailed, Massingill has not met the statutory prerequisite to filing a copyright infringement claim. The Court therefore lacks subject matter jurisdiction over his claim, and it is hereby **DISMISSED**. The time to amend lapsed more than six months ago. It is doubtful that Massingill can convince the Court to modify that date, given the trial setting in November, but he may seek leave if he wishes.

II.    Sanctions

In its Reply to Massingill's Response to its Motion to Dismiss, Stream asks the Court to

---

[13] *See, e.g., Yash Raj Films (USA) Inc. v. Sur Sangeet Video Elecs. Inc.*, 2008 U.S. Dist. LEXIS 14951, at *3 (D.N.J. Feb. 28, 2008) (providing copies of application, transmittal correspondence to the Copyright Office, Federal Express airbills and delivery receipts to the Copyright Office, and copies of cancelled checks); *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 39 (D.D.C. 2007) (e-mail response from the Copyright Office noting the receipt of plaintiff's application and fees); *Wilson v. Mr. Tee's*, 855 F. Supp. 679, 682-83 (D.N.J. 1994) (receipt from Copyright Office indicating it had received application, deposit and fee).
[14] *See Busch*, 2007 U.S. Dist. LEXIS at *6 (finding insufficient to establish jurisdiction a complaint suggesting only that the plaintiff filed a registration application with the Copyright Office).
[15] *See* Massingill's Response to Stream's Motion to Dismiss at Ex. B.

impose Rule 11 sanctions on Massingill for Massingill's failure to disclose the registration as required by Rule 26(a). A motion for sanctions for such failures must be made under Rule 37, but Stream does not do so.[16] Stream's request is therefore **DENIED** without prejudice.

III.   Motion for Summary Judgment

Stream counterclaims for a declaratory judgment of ownership of the Arsenal copyright, or in the alternative, for a declaratory judgment of non-infringement upon Massingill's alleged copyright. Stream bases its counterclaim on the argument that Massingill was an employee of Stream, which therefore owns the rights to Arsenal under the "work for hire" doctrine of the Copyright Act.[17]

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[19] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[20] In determining whether genuine issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists.[21]

---

[16] *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."); Fed. R. Civ. P. 37(c).
[17] *See* 17 U.S.C. § 201(b) (2006).
[18] Fed. R. Civ. P. 56(c); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-84 (1990).
[19] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[20] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[21] *Lynch Props.*, 140 F.3d at 625 (citation omitted).

The Copyright Act of 1976[22] provides that copyright ownership of a work protected thereunder "vests initially in the author or authors of the work."[23] However, in the case of a work made for hire, "the employer or other person for whom the work was prepared is considered the author . . . , and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."[24]

Section 101 of the Copyright Act provides that a work is "made for hire" when it is either:

> "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."[25]

Stream does not claim that Arsenal satisfies the terms of § 101(2). Quite clearly, it does not. This software program does not fit within any of the nine categories of "specially ordered or commissioned" works enumerated in that subsection. Even if Arsenal did fit into one of these nine categories, the parties must "expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."[26] In support of its position that Massingill's work on Arsenal before becoming an employee was work made for hire, Stream attaches an "Offer of Employment" to its Motion for Summary Judgment that specifically states that Massingill developed Arsenal for Stream on a "for hire" basis.[27] But taking the uncontroverted statements in Massingill's filings to be true, that Offer of Employment was never signed by

---

[22] 17 U.S.C. § 101 *et seq.*
[23] 17 U.S.C. § 201(a) (2006).
[24] 17 U.S.C. § 201(b); *see Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).
[25] 17 U.S.C. § 101 (2006).
[26] *Id.*
[27] *See* Stream's Motion for Summary Judgment, App. at 73.

either party.[28]  Arsenal thus does not fulfill either of the two necessary prongs of § 101(2).

The dispositive inquiry in this case therefore is whether Arsenal is "a work prepared by an employee within the scope of his or her employment" under § 101(1). The issue of whether an individual was an employee or an independent contractor for purposes of the work for hire doctrine is a question of law.[29]  In the absence of statutory definitions for the words "employee" or "scope of employment," the Supreme Court has held that the term "employee" and "scope of employment" carry their common agency law meanings.[30]

Stream lists and discusses thirteen factors identified by the Supreme Court as relevant under common law agency principles in deciding whether the hired party is an employee or an independent contractor.[31]  Based on the evidence it submitted on these factors, Stream argues that Massingill was an employee of Stream as a matter of law, starting in February 2005. Massingill fails to refute any of the evidence presented by Stream in support of its position that Massingill was an employee. Rather, Massingill makes contradictory arguments (presumably in the alternative) that Stream failed to perform its obligations under the alleged employment contract,[32] that Massingill was hired as an IT Director to perform tasks unrelated to the Arsenal software project,[33] and that neither Stream nor Massingill ever signed Massingill's Offer of Employment.[34]  These arguments are insufficient to controvert Stream's evidence and arguments that Massingill was an employee of Stream, and the Court finds that Massingill was an employee of Stream starting in February 2005.

However, there remains an issue of material fact as to when Arsenal was developed. If

---

[28] *See* Massingill's Response to Stream's Motion for Summary Judgment at 9.
[29] *See Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1102 at n.5 (5th Cir. 1990).
[30] *See Reid*, 490 U.S. at 739-40 (citing, *inter alia, Easter Seal Soc'y for Crippled Children & Adults of La., Inc. v. Playboy Enterprises*, 815 F.2d 323 (5th Cir. 1987)).
[31] *See* Stream's Motion for Summary Judgment at 8; *Reid*, 490 U.S. at 751-52 (citations omitted).
[32] *See* Massingill's Response to Stream's Motion for Summary Judgment at 6.
[33] *See id.* at 8.
[34] *See id.* at 9.

Arsenal was created and completed in the period between Massingill's initial hiring as an independent contractor in July 2004 and his subsequent hiring as an employee in February 2005, Arsenal does not fit into either of the statutory definitions of a "work made for hire," and Stream cannot claim ownership of the copyright based on that doctrine. Massingill claims that he was hired first as an independent contractor in relation to the development of Arsenal, and was later hired as an IT Director to perform tasks unrelated to Arsenal.[35] Stream claims that Massingill's role as IT Director included the development of Arsenal.[36] Viewing the facts in the light most favorable to nonmovant Massingill, the Court finds that there is a genuine issue of material fact as to whether Arsenal had been essentially completed while Massingill was an independent contractor, or whether it continued to be developed during his employment with Stream such that it would constitute a "work for hire" under the Copyright Act. Stream's counterclaim for a declaratory judgment of ownership of the Arsenal copyright is therefore **DENIED**.

Stream requests, in the alternative, a declaratory judgment of non-infringement of Massingill's alleged copyright. In his Response, Massingill refers to an Executive Employment Agreement and a Software License that are not in evidence.[37] He states: "It is undisputed that the software at issue is intangible property licensed via the Software License."[38] He goes on to claim that the Software License "governs the ownership of the software at issue."[39] Massingill also refers to an Executive Employment Agreement that purportedly states that "the intangible property licensed via the Software License by Employee to Employer" does not belong to Stream.

---

[35] *See* Massingill's Response to Stream's Motion for Summary Judgment at 8.
[36] *See* Stream's Motion for Summary Judgment at 3.
[37] Massingill refers to "EXHIBIT A" and "EXHIBIT B" when citing the Executive Employment Agreement and the Software License, but Exhibits A and B of his Response are his copyright application and his attorney's declaration, respectively, and the Agreement and License are not attached under different exhibit names.
[38] Massingill's Response to Stream's Motion for Summary Judgment at 8.
[39] *Id.*

Massingill introduces the language of the Software License and the Executive Employment Agreement in the context of his argument that he was not a contractual employee. This placement suggests that Massingill intended to use these documents to show that he was not an employee of Stream. However, factual assertions in pleadings are considered to be judicial admissions conclusively binding on the party who made them.[40] Massingill has therefore made a judicial admission that a software license agreement exists governing the licensing of Arsenal by Stream. However, because the Software License is not in evidence, the Court cannot view the provisions referenced in Massingill's argument in context, and therefore cannot determine whether Stream's request for a declaratory judgment of non-infringement should be granted in the form in which it is requested in Stream's Motion for Summary Judgment. Stream's motion is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. Defendants' Motion for Summary Judgment is **DENIED** as to its declaratory judgment counterclaims, and **DENIED** as moot as to the Plaintiff's claim.

**SO ORDERED.**

October 1, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

[40] *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) (citations omitted).